UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHUNY TOUCH,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>　　　　　　　　　　Respondents. | Case No.: 3:25-cv-03118-RBM-AHG<br><br>**ORDER:**<br><br>**(1) TENTATIVELY GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(2) SETTING HEARING FOR NOVEMBER 26, 2025** |

　　　　Pending before the Court are Petitioner Chuny Touch's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") (Doc. 1) pursuant to 28 U.S.C. § 2241 and Motion and Memorandum of Law in Support of Temporary Restraining Order ("TRO Motion") (Doc. 3.)  The Petition and TRO Motion seek the same relief—Petitioner's release from detention. For the reasons below, the Petition is tentatively **GRANTED**.  The Court **SETS** a hearing for **November 26, 2025 at 9:00 a.m. in Courtroom 5B** of the Edward J. Schwartz United States Courthouse.

### I.　　BACKGROUND

**A.**　　**Factual Background**

　　　　Petitioner fled Cambodia with his mother and five siblings in 1984 "after his father

was killed in the conflict." (Doc. 1 at 2.)[1] He and his family became lawful permanent residents shortly after arriving in the United States. (*Id.*; Doc. 1 at 24 [Declaration of Chuny Touch ("Touch Decl.")] ¶ 1.) Ten years later, in 1995, Petitioner was convicted of second-degree murder and attempted murder and sentenced to 15 years in prison. (Touch Decl. ¶ 2; Doc. 10 at 2.) Following his incarceration, Petitioner was transferred to immigration custody and the Department of Homeland Security ("DHS") initiated removal proceedings. (Touch Decl. ¶ 2; Doc. 10 at 2.) On June 16, 2020, an immigration judge ordered Petitioner removed to Cambodia. (Doc. 10-3 at 2.) United States Immigration and Customs Enforcement ("ICE") tried to remove Petitioner to Cambodia, but Cambodia would not issue travel documents. (Touch Decl. ¶ 4.) Therefore, after about three months in immigration custody, Petitioner was released on an Order of Supervision. (*Id.*)

Since Petitioner's release from ICE custody in September 2020, he has attended every required check-in appointment and has not been convicted of any other crime. (*Id.* ¶ 5.) On August 21, 2025, ICE re-detained Petitioner at one of his required check-in appointments. (*Id.* ¶ 6; Doc. 10 at 3.) But Petitioner was a member of a class of Cambodian nationals to whom ICE was required to provide specific notice at least 14 days before re-detaining.[2] (*See* Touch Decl. ¶ 6; Doc. 10 at 3.) A lawyer from the Asian Law Caucus helped Petitioner get released under an Order of Supervision on October 7, 2025 due to ICE's noncompliance with the *Chhoeun* order. (Touch Decl. ¶ 6; Doc. 10-2 at 3.)

That same day, ICE provided Petitioner a Notice to Removable Alien stating that it "intend[ed] to re-detain [him] for the execution of [his] final removal order and removal to Cambodia no earlier than 14 days from the date of this Notice." (Doc. 10-3 at 1.) On October 13, 2025, while Petitioner was still released under an Order of Supervision, ICE

---

[1] The Court cites the CM/ECF electronic pagination unless otherwise noted.
[2] *See Chhoeun v. Marin*, 442 F. Supp. 3d 1233, 1242 (C.D. Cal. 2020) (requiring continued compliance with the court's "temporary restraining order enjoining the government from re-detaining any class member unless the government first provided written notice at least 14 days before detention").

secured a travel document from Cambodia allowing Petitioner to be removed to Cambodia. (Doc. 10 at 3; Doc. 10-6 at 1 [Declaration of Elvira K. La Pierre ("La Pierre Decl.")] ¶ 14.) On October 21, 2025, 14 days after Petitioner received the Notice to Removable Alien, ICE re-detained him (Touch Decl. ¶ 6; La Pierre Decl. ¶ 15) and served him with a Notice of Revocation of Release indicating that Petitioner would be detained "based on a review of [his] official alien file and a determination that there are changed circumstances in [his] case." (Doc. 10-4 at 1.) The October 22, 2025 Form I-213 further provides:

> At approximately 9:37AM, San Diego [ICE Enforcement and Removal ("ERO")] Deportation Officer (DO) Ebba identified himself as an ICE officer and informed [Petitioner] that he was being placed under arrest and would be served Form I-200, Warrant for Arrest of Alien to be taken into custody. DO Ebba escorted [Petitioner] to SND staging for processing without incident. [Petitioner] stated to San Diego ICE/ERO Deportation Officers, he is not opposed to being detained as long as his travel document is available and removal flight is coordinated.

(Doc. 10-5 at 2.)

On October 31, 2025, ICE began the process of coordinating a flight for Petitioner to Cambodia. (La Pierre Decl. ¶ 16.) On November 12, 2025, ICE booked Petitioner on a flight to Cambodia scheduled to depart on November 19, 2025. (*Id.* ¶ 17.) ICE canceled that flight to comply with this Court's Order to Show Cause. (*Id.* ¶¶ 18–19; *see* Doc. 4.) ICE re-booked Petitioner for a flight to Cambodia scheduled for December 3, 2025, and "intends to execute removal on that date should the Court's stay of removal as to Cambodia be lifted by that time." (Doc. 10 at 3–4; La Pierre Decl. ¶ 20.)

**B.  Procedural Background**

On November 12, 2025, Petitioner filed the Petition against Kristi Noem, Pamela Bondi, Todd Lyons, Jesus Rocha, and Christopher LaRose (collectively, "Respondents"). (Doc. 1.) The same day, Petitioner filed a Motion for Appointment of Counsel (Doc. 2) and the TRO Motion. (Doc. 3). On November 14, 2025, the Court granted the Motion for Appointment of Counsel and ordered Respondents to show cause why the Petition and accompanying TRO Motion should not be granted by filing a written response. (Doc. 4 at

2–4.) On November 19, 2025, Respondents filed their Response in Opposition to Petitioner's Habeas Petition and Application for Temporary Restraining Order ("Response"). (Doc. 10.) On November 20, 2025, Petitioner filed his Traverse in Support of Petition for Writ of Habeas Corpus ("Reply"). (Doc. 11.)

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.  DISCUSSION

Petitioner argues that his detention unlawfully violates: (1) the regulations set forth in 8 C.F.R. § 241.4(l) and § 241.13(i); (2) the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (3) the Fifth Amendment. (Doc. 1 at 2, 7–14.) Petitioner also claims ICE may not remove him to a third country "without providing an opportunity to assert fear of persecution or torture before an immigration judge." (*Id.* at 3, 14–18.)

Respondents argue that the Petition must be denied because: (1) ICE complied with the notice and prompt interview requirements of § 241.4 and § 241.13; (2) Petitioner's removal is significantly likely in the reasonably foreseeable future as required under *Zadvydas*; and (3) Petitioner's claim regarding third-country removal is moot because ICE is seeking to remove him only to Cambodia. (Doc. 10 at 4–6.)

**A.  Due Process**

Petitioner challenges his detention as unlawful based on ICE's decision to revoke his release without providing sufficient notice or a prompt interview. (Doc. 1 at 8–9; Doc.

11 at 3–5.) Petitioner's claims therefore implicate the Due Process Clause. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. *Zadvydas*, 533 U.S. at 693–94. The fundamental requirements of due process are that a person be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

**B.    Agency Regulations**

The detention and release of noncitizens who are subject to a final order of removal are governed by 8 U.S.C. § 1231. Under that statute, "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days," also known as the "removal period." § 1231(a)(1)(A). "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). Those regulations, which govern release and revocation of release of noncitizens subject to a final order of removal, are 8 C.F.R. § 241.4 and § 241.13. Under both regulations, ICE failed to comply with the required procedures, thereby violating Petitioner's due process rights.

In relevant part, release may be revoked under 8 C.F.R. § 241.4 when the Executive Associate Commissioner or a district director believes revocation "is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]." 8 C.F.R. § 241.4(l)(2)(iii). Section 241.13 provides "special review procedures" that apply where a noncitizen "has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." § 241.13(a). Release may be revoked under this section if, "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2). Under both regulations, "[u]pon revocation," the noncitizen "will be

notified of the reasons for revocation of his or her release or parole" and will be given "an initial informal interview promptly after his or her return to Service custody" to "respond to the reasons for revocation stated in the notification." § 241.4(l)(1); § 241.13(i)(3).

Petitioner argues that his detention is procedurally deficient because he was not provided sufficient notice of the reasons for revocation of his release or a prompt interview to respond to those reasons. (Doc. 1 at 7–10; Doc. 11 at 3–5.)

As to notice, Petitioner argues that the Notice of Revocation of Release, which stated only that revocation was "based on a review of [Petitioner's] official alien file and a determination that there are changed circumstances in [his] case," is insufficient to meet the requirements of §241.4(l) and § 241.13(i). (Doc. 11 at 3–4 (citing Doc. 10-4 at 1).) Respondents argue that the Notice of Revocation of Release provided sufficient notice, and that "ICE further explained to Petitioner that he was being re-detained because it obtained his travel document and would be executing his removal to Cambodia." (Doc. 10 at 4–5 (citing La Pierre Decl. ¶ 15; Touch Decl. ¶ 6).)

Under the circumstances, the Court tentatively finds Petitioner was provided adequate notice of the reasons for revocation of his release. As Petitioner notes, district courts have found that "[s]imply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough." (Doc. 1 at 8 (quoting *Sarail A. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2533673, at *10 (D. Minn. 2025)).) "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition." *Id.* (emphasis in original); *see also McSweeney v. Warden of Otay Mesa Det. Facility*, Case No.: 3:25-cv-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (granting habeas petition because "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons"). Here, Petitioner was told that he was being detained so ICE could execute his removal order and because ICE had obtained a travel document for Cambodia. (La Pierre Decl. ¶ 15; Touch Decl. ¶ 6.) ICE did not "simply recite[] the

6

language of the regulation;" rather, "the change in circumstances was factual and supported a likely removal." *Sarail A.*, 2025 WL 2533673, at *6. The Court thus tentatively finds ICE did not violate the notice requirement.

The same cannot be said, though, of the prompt interview requirement. Although Petitioner must be afforded "an initial informal interview promptly after his or her return to Service custody," he still has not received one. (*See* Doc. 11 at 5.) Respondents argue that Petitioner's claim that he did not receive an informal interview is "belied by the record." (Doc. 10 at 5.) To the contrary, the record weighs in Petitioner's favor.

First, Petitioner represents that he did not receive an interview. (Doc. 1 at 8.) Second, the documents upon which Respondents rely do not state Petitioner received an interview. Rather, both La Pierre's sworn declaration and the Form I-213 state only that Petitioner would be placed under arrest and removed, to which Petitioner replied "he is not opposed to being detained so long as his travel document is available and removal flight is coordinated." (La Pierre Decl. ¶ 15; Doc. 10-5 at 2.) Although 8 C.F.R. § 241.4(l)(1) and § 241.13(i)(3) do not specify exactly what must occur during the informal interview, they indicate the interview is meant "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.4(l)(1). Furthermore, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." § 241.13(i)(3). The deportation officer's statement, and Petitioner's short response, cannot be construed as adequately providing Petitioner an opportunity to respond to the reasons for revocation or submit any relevant evidence.

Third, ICE's own exhibits provided in response to other habeas petitions indicate that ICE does not, and has not, considered the circumstances here to constitute the required interview. For example, in *McSweeney v. Warden of Otay Mesa Detention Facility*, ICE argued that it had properly provided the petitioner with an informal interview by including as an exhibit a "Record of Personal Interview" conducted "[p]ursuant to 8 C.F.R 241.4(i)(3)." 25-cv-02488-RBM-DEB, ECF No. 9-2 at 31. The Record of Personal

Interview spans three pages and lists several questions that deportation officers asked the petitioner, including "[d]o you have any information to submit to the Review Panel that you believe provides a basis for your release?" *Id.* at 31–33.  In *J.L.R.P v. Wofford*, ICE argued that it had properly provided the petitioner with an informal interview by including as an exhibit a document titled "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(l); 8 C.F.R. §241.13(i)."  No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *3 (E.D. Cal. Nov. 14, 2025).  That document stated that "an initial informal interview was conducted . . . and that [the petitioner] gave an oral response. . . . [The petitioner's] oral response is handwritten in Spanish, apparently by the interviewing ICE agent."  *Id.*  The handwritten response states: "Cumpli con todas ruls citas programadas con el ICE en tiempo fecha desde mi ingreso al pais." ("I complied with all scheduled appointments with ICE on time since my entry into the country.")  *Id.* n.2.

Most tellingly, the Court considers ICE's argument in another habeas petition recently argued before it: *Rasakhamdee v. Noem*, 25-cv-2816-RBM-DEB.  In *Rasakhamdee*, ICE included as an exhibit a Form I-213 stating:

> At approximately 9:30 a.m., SDDO C. McAllister and DO R. Ortiz arrived at the NDU office and contacted [the petitioner].  Upon contact, SDDO McAllister and DO Ortiz identified themselves as "Police/ICE" and escorted him to a private room.  Once in the room, SDDO McAllister and DO Ortiz advised [the petitioner] that he was going to be placed under arrest and remanded back into ICE custody.

*Id.*, ECF No. 8-2 at 22. In addition to the Form I-213, ICE included as an exhibit a document titled "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i)."  *Id.* at 29.  This document indicates that a different deportation officer, on a different day, "conducted an initial informal interview of [the petitioner] to afford [him] an opportunity to respond to the reasons for revocation of his or her order of supervision stated in the notification letter."  *Id.*  "At the interview, the alien made the following oral response regarding the reasons for revocation. . . ."  *Id.*
/ / /

1   Here, Respondents included as an exhibit a Form I-213 very similar to the one in
2   *Rasakhamdee* stating:

> At approximately 9:37AM, San Diego [ICE Enforcement and Removal ("ERO")] Deportation Officer (DO) Ebba identified himself as an ICE officer and informed [Petitioner] that he was being placed under arrest and would be served Form I-200, Warrant for Arrest of Alien to be taken into custody. DO Ebba escorted [Petitioner] to SND staging for processing without incident. [Petitioner] stated to San Diego ICE/ERO Deportation Officers, he is not opposed to being detained as long as his travel document is available and removal flight is coordinated.

(Doc. 10-5 at 2.)

But here, unlike in *Rasakhamdee*, *McSweeney*, or *J.L.R.P*, there is no additional documentation indicating Respondents conducted an informal interview for the purpose of affording Petitioner an opportunity to respond to the reasons for revocation of his release. Thus, considering the deviation from Respondents' usual practice, the La Pierre Declaration and Form I-213 not expressly indicating Petitioner received an interview, and Petitioner's representation that he did not receive an interview, the Court tentatively finds that Petitioner did not receive an interview in accordance with § 241.4 and § 241.13.

If the Court confirms its tentative, it will also find that ICE's failure to provide Petitioner with an informal interview in the month since he was taken into custody (*see* Touch Decl. ¶ 6) violates the promptness requirement. *See M.S.L. v. Bostock*, Civ. No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (finding an interview given 27 days after petitioner was taken into ICE custody "cannot reasonably be construed as . . . prompt" and granting petition).

Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Confederated Tribes & Bands of Yakima Indian Nation v. F.E.R.C.*, 746 F.2d 466, 474 (9th Cir. 1984) ("It is a well-known maxim that agencies must comply with their own regulations.") ICE failed to do so here. The great weight of district courts to consider the issue have "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the

petitioner's release must be ordered." *Rokhfirooz v. Larose*, --- F. Supp. 3d ---, 2025 WL 2646165, at *4 (S.D. Cal. 2025); *K.E.O. v. Woosley*, Civil Action No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025) (noting "courts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations"); *Grigorian v. Bondi*, CASE NO. 25-cv-22914-RAR, 2025 WL 2604573, at *10 (S.D. Fla. Sept. 9, 2025) ("The failure to provide [the petitioner] with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels [the petitioner's] release.").

This Court tentatively reaches the same conclusion. ICE's failure to comply with 8 C.F.R. § 241.4 and § 241.13 violated Petitioner's due process rights. *See Diaz v. Wofford*, Case No. 1:25-cv-01079 JLT EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); *M.S.L.*, 2025 WL 2430267, at *11 ("ICE's failure to provide [the petitioner] with a timely Notice of Revocation or conduct an informal interview until nearly a month after taking her into custody is a grave violation of [the petitioner's] due process rights in that they deprived her both of meaningful notice and an opportunity to be heard.").

Accordingly, the Petition is tentatively **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, the Petition is tentatively **GRANTED**. The Court **SETS** a hearing for **November 26, 2025 at 9:00 a.m.** in Courtroom 5B of the Edward J. Schwartz United States Courthouse. Alternatively, the Parties may submit to this tentative Order by filing a Joint Status Report on or before **November 25, 2025 at 4:30 p.m.**

**IT IS SO ORDERED.**

DATE: November 25, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE